# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T.M., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 12-cv-1490 (RJL) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(August __, 2013) [Dkt. #11]

T.M., a disabled minor, and his foster and surrogate parents ("parents"),[1] bring this suit against the District of Columbia ("defendant" or "the District"), alleging that District of Columbia Public Schools ("DCPS") deprived T.M. of the right to a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act, as amended by the Individuals with Disabilities Education Improvement Act of 2004 (collectively, "IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and the Rehabilitation Act § 504, 29 U.S.C. § 794. *See generally* Compl. [Dkt. #1]. Plaintiffs also seek relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983. *See id.* Before the Court is defendant's Motion to Dismiss [Dkt. #11]. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the motion is GRANTED in part and DENIED in part.

---

[1] From April 2011 through March 2012, T.M.'s surrogate parent for educational purposes was one "Ms. Katz," and she remains his guardian *ad litem*. Compl. ¶ 8. Plaintiffs Clark Ray and Aubrey Dubra are T.M.'s foster parents, and since March 2012, they have served as his surrogate parents for educational purposes. *Id.* ¶¶ 4–5.

## BACKGROUND

Plaintiffs' complaint alleges the following facts, which at this stage, the Court must accept as true. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

T.M. is a nine year old boy diagnosed with significant emotional trauma and learning disabilities in several academic and developmental areas including math, reading, writing, speech, and fine motor skills. Compl. ¶ 7. Since April 7, 2011, and at all times relevant to this case, T.M. attended Bruce-Monroe Elementary School ("Bruce-Monroe"), where he was enrolled in a program for emotionally disabled students (an "ED program") per an agreement between DCPS and T.M.'s parent. *Id.* ¶¶ 7–9. T.M. also had an individualized education program ("IEP") in place when he entered Bruce-Monroe's ED program. *Id.* ¶ 8. The IEP specified certain educational and developmental requirements for T.M.—for instance, full-time placement in a therapeutic setting and weekly counseling and occupational therapy services—and also contained a Behavior Intervention Plan ("BIP"), which set forth target behaviors and approved interventions that the school was to employ in appropriate situations. *Id.* ¶¶ 8, 10. The IEP was modified several times throughout the year. *Id.* ¶¶ 9–10.

From April through October 2011, T.M. exhibited little (if any) academic or behavioral progress, and his parent at the time became increasingly concerned that the school was not appropriately following the IEP and BIP. *Id.* ¶¶ 11–17. DCPS and T.M.'s

parent met on September 19, 2011 to discuss his IEP, which they agreed to revise to add services of a one-on-one aide, effective October 31. *Id.* ¶ 16. At the end of the meeting, DCPS identified a specific aide—a "Mr. D"—who would come available within the next few weeks and who already had a positive relationship with T.M. *Id.* Sometime between September 20 and October 13, however, Bruce-Monroe fired Mr. D because he wrote an incident report without authorization to do so. *Id.* ¶¶ 18, 21.

T.M.'s difficulties persisted in November 2011. *Id.* ¶ 19. Another meeting was held on November 15, 2011, at which the school staff indicated that they had requested a new aide to replace Mr. D. *Id.* ¶ 20. The school's occupational therapist also informed T.M.'s parent that for the past month, she had been either unable to provide services to T.M. or was forced to provide them in the classroom setting because T.M. would not willingly go to her office. *Id.* DCPS and T.M.'s parent also discussed three incident reports, including the one that resulted in Mr. D's termination. *Id.* ¶ 21. The IEP in effect as of November 2011 indicated that T.M. was to be assigned a dedicated one-on-one aide, 27.5 hours of specialized academic service weekly, and one hour of behavioral service and one hour of occupational therapy each week, all in a full-time therapeutic location. *Id.* ¶ 10.

In January and February 2012, T.M.'s parent and other interested parties (including plaintiffs' counsel) tried to observe T.M. while in school. *Id.* ¶ 23. DCPS allowed three observations—one each by T.M.'s parent, plaintiffs' counsel, and an expert—before

advising that such observations by parents and attorneys were not permitted. *Id.* Those who observed T.M. saw that he was allowed a great deal of free time and still exhibited behavioral problems, which went effectively unpunished despite the BIP's disciplinary requirements. *Id.* ¶¶ 24–26.

Plaintiffs filed a due process complaint on March 7, 2012, wherein they asserted that DCPS was not following the IEP or BIP, not providing all required services in appropriate locations, and not achieving academic or behavioral goals. *Id.* ¶ 27. They also alleged that DCPS had misrepresented T.M.'s progress and had deprived his parents of their statutory right to participate in the Multidisciplinary Team ("MDT")/IEP process. *Id.* DCPS held a resolution meeting on March 22, during which it claimed that T.M.'s parents had been invited to, and failed to attend, a meeting on either February 1 or February 2 concerning T.M.'s Functional Behavioral Assessment and BIP.[2] *Id.* ¶ 28. T.M.'s parents never received notice of the meeting. *Id.* At the March 22 meeting, DCPS and T.M.'s teacher also told the parents that T.M. was making significant progress, though questionnaires prepared by T.M.'s teacher indicated the opposite. *Id.* ¶ 29.

On March 29, 2012, plaintiffs received an invitation to an annual IEP meeting scheduled for April 20. *Id.* ¶ 28. That invitation again referenced a February meeting to which plaintiffs had not been invited. *Id.* At the annual meeting, DCPS again asserted that T.M. was making significant academic and behavioral progress, as evidenced by his

---

[2] The complaint reflects some confusion DCPS's part about the exact date of the meeting. *See id.* ¶¶ 30–31.

work on in-class assessments. *Id.* ¶ 32. When T.M.'s parents probed further, however, they discovered that the purported in-class assessments were actually examples of homework completed by T.M. with assistance from his parents. *Id.* One of T.M.'s parents, plaintiff Ray, was upset by the fact that DCPS was presenting homework as in-class work. *Id.* He became even more upset, and ultimately ended the meeting, when DCPS counsel later clarified that the disputed February meeting had not actually taken place. *Id.* On April 27, DCPS provided plaintiffs' counsel with a new IEP, which was revised and finalized following the April 20 annual meeting. *Id.* ¶ 35.

Shortly thereafter, plaintiffs amended their due process complaint to include an allegation that DCPS falsified documents to make it appear that a February meeting had taken place. *Id.* ¶ 33. A due process hearing was held before a Hearing Officer on May 29 and 31 and June 1, 2012. *Id.* ¶ 36. Plaintiffs offered documentary evidence, as well as fact and expert testimony in support of their claim that T.M. had been denied a FAPE. *Id.* ¶¶ 37–38. The hearing officer issued a determination on June 28, 2012, finding for plaintiffs on some issues and defendant on others. *Id.* ¶ 41. Plaintiffs now contend that the hearing officer's adverse findings were factually and legally erroneous, arbitrary, capricious, and against the weight of the evidence. *Id.* ¶¶ 42–47. In Count I of their complaint, plaintiffs seek compensatory education and declaratory relief under the IDEA and Rehabilitation Act, and in Count II, they assert a right to damages under 42 U.S.C. §

1983.[3] *See id.* ¶¶ 51–58.

Defendant moves to dismiss the entire complaint on the ground that it is not "a short and plain statement" or "simple, concise, and direct" as required by Federal Rule of Civil Procedure 8(a)(1) and (d)(1). Mot. to Dismiss at 5–6 (citing *Unfoldment, Inc. v. District of Columbia*, C.A. No. 07-1717(HHK), 2007 WL 3125236 (D.D.C. Oct. 24, 2007), and *Brown v. Califano*, 75 F.R.D. 497 (D.D.C. 1977)). As to plaintiffs' IDEA claim, defendant relies solely on this Rule 8 argument. Defendant also moves to dismiss plaintiffs' Rehabilitation Act claim on the ground that plaintiff has failed to allege "bad faith or . . . gross misconduct," and their § 1983 claim for failure to allege that T.M. was denied a FAPE pursuant to any District "custom or practice." *Id.* at 6–10 (citing *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 30, 35–36 (D.D.C. 2001)).

## LEGAL STANDARD

"[Federal Rule of Civil Procedure] 8(a) sets out a minimum standard for the sufficiency of complaints . . . ." *Brown*, 75 F.R.D. at 498. It requires "a short and plain statement of the claim" and is intended "to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Id.* It

---

[3] Although plaintiffs' do not specify "compensatory damages" in their request for relief, *see* Compl. at pp. 30–35, the Court assumes they are seeking damages, as that is a common reason plaintiffs bring both IDEA and § 1983 claims. *See Walker v. District of Columbia*, 157 F. Supp. 2d 11, 30, 35 (D.D.C. 2001) ("Compensatory damages . . . are not available under the IDEA. As this court has held, a plaintiff seeking money damages must bring a Section 1983 claim for damages to vindicate his or her rights under the IDEA.").

also "serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds." *Id.* The rule "is by no means exacting," and it "accords the plaintiff wide latitude in framing his claims for relief." *Id.* at 499. Still, a complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet the Rule's liberal pleading requirement. *Id.* (collecting cases); *see also Unfoldment, Inc.*, 2007 WL 3125236. The same can be said for a complaint that "contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments." *Brown*, 75 F.R.D. at 499. The Court has the discretion to dismiss complaints that do not comply with Rule 8. *See Ciralsky v. C.I.A.*, 355 F.3d 661, 669 (D.C. Cir. 2004) ("Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with the Federal Rules . . . .").

Under Rule 12(b)(6), meanwhile, the Court must dismiss plaintiffs' complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). When analyzing plaintiffs' claims, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived

from the facts alleged." *Sparrow*, 216 F.3d at 1113 (citation and internal quotation marks omitted). But "the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The plaintiff is not required to "'plead law or match facts to every element of a legal theory'" in the complaint, *Sparrow*, 216 F.3d at 1115 (quoting *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000)); however, the complaint must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (internal quotation marks omitted). Finally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

Defendant has taken the position, in essence, that the entire complaint says too much, Mot. to Dismiss at 5 ("Plaintiffs' rambling, verbose complaint is bloated . . . ."), but with regard to specific claims, it says too little, *id.* at 7–8 (arguing that plaintiffs failed to allege certain elements of Rehabilitation Act and § 1983 Act claims). I agree with the District on the latter point but will not dismiss the complaint in its entirety under Rule 8.

### A. Plaintiffs' IDEA Claim

Defendant cites two cases—*Unfoldment, Inc.*, 2007 WL 3125236, and *Brown*, 75 F.R.D. 497—in which courts in this district dismissed complaints under Rule 8 on the basis that they were verbose, incomprehensible, and full of "bold conclusions, sharp harangues and personal comments," 75 F.R.D. at 499. *See* Mot. to Dismiss at 5–6. The complaints in those cases are easily distinguishable from the one filed in this case. In *Unfoldment, Inc.*, the complaint was "368 paragraphs and eleven footnotes spread over 61 pages." 2007 WL 3125236, at *1. One footnote was a page long and "set forth the facts in an unrelated case." *Id.* The complaint also meandered into completely irrelevant topics like the thirty-year history of Unfoldment, Inc. and "discourses about principles of law and court rulings that plaintiffs believe[d would] come into play in adjudicating th[e] dispute." *Id.* Likewise, the complaint in *Brown* was "a confused and rambling narrative of charges and conclusions concerning numerous persons, organizations and agencies," and plaintiff failed to allege "with even modest particularity the dates and places of" key events. 75 F.R.D. at 499. A survey of other cases that apply the same rationale as *Unfoldment, Inc.* and *Brown* confirms that dismissal under Rule 8 is typically reserved for complaints that are so excessively long as to be unmanageable, or so poorly conceived and drafted that it is difficult to decipher a coherent, viable cause of action.[4]

---

[4] *See, e.g.*, *Robinson v. District of Columbia*, 283 F.R.D. 4, 6–7 (D.D.C. 2012) ("disorganized and convoluted" 196-page amended complaint containing plaintiff's "conspiracy theories"); *Nichols v. Holder*, 828 F. Supp. 2d 250, 253 (D.D.C. 2011) (140-page complaint containing "hazy conspiracy theories and potentially barred claims"); *Parker v. Sec'y of U.S. Treasury*, C.A. No. 11-1199, 2011 WL 2580115, at *1 (D.D.C. June 29, 2011) (complaint demanding

Plaintiffs' 35-page, 58-paragraph complaint bears little resemblance to the ones described above. It is, for the most part, a chronological walkthrough of meetings and other interactions between T.M.'s parents and DCPS employees regarding T.M.'s education and development. Although the complaint undoubtedly contains more detail than necessary to meet the bare bones requirement of Rule 8, it is important to keep in mind that the "short and plain statement" is a "*minimum* standard" for pleadings. *Brown*, 75 F.R.D. at 498 (emphasis added). After all, the rule does not *mandate* dismissal of any complaint that goes ever so slightly beyond "short and plain." In fact, where the complaint provides additional relevant detail in a logical and coherent fashion, it serves to advance the rule's purpose of "giv[ing] fair notice of the claim being asserted." *Brown*, 75 F.R.D. at 498.[5]

In addition, any superfluous details scattered throughout the complaint are certainly not so extreme as to render the allegations unintelligible, as would be needed to warrant dismissal.[6] The overwhelming majority of the complaint focuses on T.M.'s

---

$999 million in damages because IRS and others failed to investigate plaintiffs' evidence of bribery scheme, but showing no entitlement to relief); *Norman v. Aston Judiciary Sq.*, C.A. No. 11-1539, 2011 WL 3799543, at *1 (D.D.C. Aug. 26, 2011) ("cryptic complaint" that "fails to provide any notice of a claim"); *Brown*, 75 F.R.D. at 499 (collecting cases that involved complaints that "def[ied] comprehension" or were "unintelligible," "circuitous diatribes," or "meandering, disorganized, prolix narrative").

[5] *See also Twombly*, 550 U.S. at 555 n.3 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1202, p. 94–95 (3d ed. 2004), for the proposition that "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented.'").

[6] *See, e.g.*, *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Some complaints are windy but understandable. Surplusage can and should be ignored. Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case. A district court is not 'authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading.'" (quoting *Davis v. Ruby Foods, Inc.*, 269 F.3d 818,820 (7th Cir. 2001))); *Trew v. Am. Inst. of Intradermal Cosmetics,*

educational needs, his parents' efforts to protect his interests, and DCPS's allegedly inadequate responses. And it has none of the random diversions and disconnected musings that are often the hallmark of cases dismissed for being too verbose. *See, e.g., Hamrick v. Bremer*, C.A. No. 05-01993, 2005 WL 6799409, at *1 (D.D.C. Oct. 20, 2005) (describing complaint that was "filled with excerpts of poetry and music, references to various articles, and recitations of various provisions of the Federal Rules of Evidence").[7] Plaintiffs' claims for declaratory relief and compensatory education under the IDEA therefore survive defendant's motion. The Rehabilitation Act and § 1983 claims do not fare so well, however.

### B. Plaintiffs' Rehabilitation Act and § 1983 Claims

"[T]o state a claim under Section 504 of the Rehabilitation Act, a plaintiff must show that he or she was discriminated against 'solely by reason of his [or her] handicap.'" *Walker*, 157 F. Supp. 2d at 35 (quoting 29 U.S.C. § 794). In addition, our Circuit has held that in the IDEA context, it is not enough for a plaintiff to show that a child has been denied a FAPE. *Id.* (citing *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984)). Rather, "bad faith or gross misjudgment should be shown." *Id.* (internal

---

*Inc.*, 04-2163B, 2005 WL 1079316, at *1 (W.D. Tenn. May 3, 2005) ("The presence of extraneous matter, unless in extreme cases, which this is not, does not warrant dismissal."); *Sonnino v. Univ. of Kansas Hosp. Auth.*, C.A. 02-25760KHV, 2003 WL 1562551, at *2 (D. Kan. Mar. 24, 2003) ("[I]t is apparent that the courts correctly focus on the quality and not exclusively on the tonnage of the complaint, *i.e.*, whether the complaint provides adequate notice of plaintiff's claims.").

[7] Defendant identifies only one other problem with the complaint: There are too many sentences in paragraphs 9, 16, 20, 28, 32, and 38. The fact that plaintiffs did not break up these six paragraphs into twelve or fourteen shorter ones is not, on its own, reason to dismiss the complaint.

quotation marks omitted). "Liability will not be imposed so long as the 'state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educated professionals.'" *Id.* at 35–36 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982)); *see also Torrence v. District of Columbia*, 669 F. Supp. 2d 68, 71–72 (D.D.C. 2009) ("[Section] 504 is attuned to programmatic failures while the IDEA is focused on the individual student who needs special education.").

In their opposition to defendant's motion, plaintiffs identify a number of DCPS actions and decisions that they contend amount to bad faith and/or gross misconduct. *See* Pls.' Opp'n to Mot. to Dismiss (Pls.' Opp'n) at 7–8 [Dkt. #12]. Most of them, however, reflect nothing more than DCPS's alleged failure to provide a FAPE. *See id.* (*e.g.*, failure to provide occupational therapy; failure to provide a one-on-one aide). Others simply do not rise to the level of bad faith or gross misconduct. *See id.* (*e.g.*, failure to report some of T.M.'s behavioral incidents; refusal to allow plaintiffs' representatives more than three observations). The rest do suggest possible bad faith or misconduct, but only because they rely on unsupported assertions and bald speculation about DCPS officials' motives for certain actions. *See id.* (references to a February meeting that never took place allegedly intended to block parents' participation in the IEP process; termination of a school aid allegedly because he reported an incident to T.M.'s parents). Such baseless conjecture is not sufficient to survive a motion under Rule 12(b)(6), *see Kowal*, 16 F.3d at

1276, especially in a case where the plaintiffs' own complaint chronicles many months of active engagement between the parties about how best to educate T.M. *See* Compl. ¶¶ 9–10, 28 (describing six meetings between the parties); *see also* Pls.' Opp'n at 8 (referring to "continuous debate and discussion" between T.M.'s parents and DCPS). Plaintiff also does not allege that T.M. "was treated differently from non-disabled students solely because of his . . . disabilities." *See Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 125 (D.D.C. 2011). Ultimately, whether DCPS provided T.M. with a FAPE will be litigated as part of the IDEA case, but all of the *facts* in the complaint suggest that DCPS officials handled the matter in a non-discriminatory, good-faith manner. Because the Court cannot "infer more than the mere *possibility* of misconduct," plaintiffs have failed to show that they are entitled to relief under the Rehabilitation Act, and that claim must be dismissed. *Iqbal*, 556 U.S. at 679 (emphasis added).

So too must their claim for damages under § 1983. When § 1983 is used to vindicate rights under the IDEA, the plaintiff "must carry a heavy burden in order to prevail" because "the provision of compensatory damages is an extraordinary remedy." *Walker*, 157 F. Supp. 2d at 30. In such cases, a four part test applies. *Id.* Even assuming plaintiffs can meet the first two parts—(1) DCPS violated the IDEA and (2) special circumstances caused the violations to be persistently egregious—they have not alleged any facts to support the third and fourth parts: (3) the violations were in keeping with a District custom or practice and (4) normal IDEA remedies, such as compensatory

education, are inadequate to remedy the harm. *See id.* In their opposition to the District's motion, plaintiffs state that the alleged IDEA violations were "official policy" and that "compensatory education cannot remedy the losses," but they do not cite to similar allegations in the complaint, nor do they provide any other factual support whatsoever. Pls.' Opp'n at 9; *see* Mem. Op. at 8–10, *Jackson v. District of Columbia*, C.A. No. 02-968 (EGS) (D.D.C. Sept. 21, 2003) [Dkt. #19] (Our Circuit "requires that the complaint include some factual basis for the allegation of a municipal policy of custom. . . . [P]laintiffs' primary request for relief is for compensatory education, and the Complaint does not suggest any reason why that remedy is inadequate . . . ." (citation and internal quotation marks omitted)). Accordingly, the Court will dismiss Count II of the complaint.

## CONCLUSION

Thus, for all the foregoing reasons, defendant's Motion to Dismiss [Dkt. #11] is hereby GRANTED in part and DENIED in part. An appropriate order shall accompany this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge