# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| T.M., et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 12-cv-1490 (RJL)** |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | **FILED** |
| | ) | |
| **Defendant.** | ) | DEC 0 3 2014 |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(December __2__ 2014) [Dkt. ##22, 28, 32]

This case arises under the Individuals with Disabilities Education Act ("IDEA") as amended and reauthorized by the Individuals with Disabilities Education Improvement Act of 2004. 20 U.S.C. § 1400 *et seq*. Plaintiff T.M. is a disabled child. Compl. ¶ 4 [Dkt. #1]. Plaintiffs Clark Ray and Aubrey Dubra were T.M.'s foster parents and now are his adoptive parents. Mem. of P. &. A. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem.") at 30-31 [Dkt. #22]. Plaintiffs claim that defendant District of Columbia, through the actions of the District of Columbia Public Schools ("DCPS"), violated T.M.'s rights under the IDEA. After an administrative due process hearing below, plaintiffs bring this civil suit. Compl. at 1-2. The parties now cross-move for summary judgment. Pls.' Mot. for Summ. J. [Dkt. #22]; Def.'s Cross Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J. [Dkt. #28]. After review of the motions, the applicable law, and the administrative record, defendant's motion for summary judgment is GRANTED and plaintiffs' motion is DENIED.

## BACKGROUND

The IDEA guarantees children with disabilities the right to a free appropriate

public education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). In designing an appropriate

education for students with disabilities, a child's parents, teachers, school officials, and

other professionals collaborate to develop an individualized education plan ("IEP") to

meet the child's unique needs. *Id.* § 1414(d)(1)(B). Parents who believe their child's

rights under the IDEA are being violated may file an administrative due process

complaint and are entitled to an impartial due process hearing. *Id.* § 1415(f). Any party

aggrieved by the findings and decision made during the administrative hearing may file a

civil action in a district court of the United States. *Id.* § 1415(i)(2)(A).

At the time of the administrative complaint underlying this case, T.M. was a nine-

year-old in third grade at Bruce Monroe Elementary School. AR 8.[1] T.M. enrolled in

Bruce Monroe in the spring of 2011 after attending school in Prince George's County,

Maryland, where he had an IEP. AR 48-50, 142. A multi-disciplinary team ("MDT")

reviewed and revised T.M.'s IEP in April 2011, AR 114-31, and again in May 2011, AR

132-153. That summer, T.M. was hospitalized and diagnosed with post-traumatic stress

disorder and attention deficit hyperactivity disorder. AR 51-69. T.M. continued at

Bruce Monroe Elementary School for the 2011-2012 school year. *See, e.g.*, AR 240-52.

In September 2011, the MDT again reviewed and revised T.M.'s IEP. *Id.* The

September 2011 IEP established goals in academic subject areas as well as emotional,

---

[1] References to the administrative record are denoted "AR." The administrative record is available at Docket Entries 18-21.

social, behavioral, and motor skills/physical development.  AR 242-47.  It required that

T.M. receive 22.5 hours per week of specialized instruction, one hour per week of

occupational therapy, and four hours per month of behavioral support services, all to be

provided outside of the general education setting.  AR 248.

In October, after concern from T.M.'s parents over reports of behavioral incidents,

DCPS conducted a Least Restrictive Environment ("LRE") Review, which consisted of

observing T.M. in class over the course of two days.  AR 253-59.  The observer did not

report any significant behavioral concerns and concluded that Bruce Monroe would be

able to implement T.M.'s IEP.   AR 256-57.  She recommended that Bruce Monroe

conduct a new Functional Behavioral Assessment ("FBA") and develop a Behavior

Improvement Plan ("BIP"), AR 257, which it did in November, AR 280-82.

T.M.'s IEP was amended without a meeting in November 2011 to include

transportation services.  AR 267, 283.  The requirements of 22.5 hours per week of

specialized instruction, one hour per week of occupational therapy, and four hours per

month of behavioral support services, all provided outside of the general education

setting, remained the same.  AR 274.  The November 2011 IEP also included the services

of a one-on-one dedicated aide, *id.*, though those services were not provided, AR 12.

Two teachers headed T.M.'s classroom during the 2011-2012 school year:  Ms.

Thomas for the first part of the year, and Mr. Coulibaly beginning in January 2012.  AR

1168-69.  In January and February 2012, T.M.'s parents and representatives requested to

observe his classroom.  AR 209-213, 215-223, 228.  DCPS permitted T.M.'s then-

guardian *ad litem* and one of plaintiffs' expert witnesses each to perform one observation.

AR 209-213, 1312. Requests by another expert and T.M.'s parents themselves, as well as for additional observations by those who had observed once, were denied. AR 209-213, 215-223. At around the same time, T.M. was accepted into the Lourie Center School, a private school in Rockville, Maryland. AR 434.

A February 6, 2012, IEP Progress Report indicated that T.M. was progressing on all of his IEP annual goals. AR 455-59. However, T.M.'s parents were concerned with his behavior and progress in school and filed an administrative due process complaint on March 7, 2012. AR 471-98. After the initial complaint was filed, DCPS continued to review and update T.M.'s FBA, BIP, and IEP. During a resolution meeting in March and subsequent discovery, it came to the parents' attention that paperwork reflected that there had been a meeting in early February. AR 557. Parents and their counsel were not informed about the possibility of such a meeting, and DCPS denies that such a meeting ever took place. AR 1796-97. The paperwork included a letter of invitation, a disability worksheet, finding of eligibility, and meeting attendance record. AR 440-447.

The MDT revised T.M.'s IEP in April 2012 IEP. AR 599-625. The April 2012 IEP called for 22.5 hours per week of specialized instruction, four hours per month of occupational therapy, and two hours per month of behavioral support services, all to be provided outside of the general education setting. AR 621. However, T.M.'s parents did not agree to finalize the April 2012 IEP. AR 13.

Plaintiffs amended their due process complaint on April 30, 2012. AR 727-70. In general terms, the amended complaint asked the Hearing Officer ("HO") to adjudicate whether DCPS had denied T.M. a free appropriate public education based on numerous

4

specific actions or inactions by the teachers and school, whether Bruce Monroe was an appropriate placement, and whether T.M. was entitled to compensatory education. *Id.* Plaintiffs took issue with, among other things, DCPS's alleged failure to provide a one-on-one aide, failure to provide occupational therapy, failure to provide speech and language services, failure to implement the BIP, refusal to allow plaintiffs' requested observations, failure to implement appropriate instructional methodologies, and misrepresentations regarding meetings and progress. *Id.*

Prior to the hearing, the Hearing Officer issued a pre-hearing order which indicated that the hearing would be held over the course of three days. AR 805. Plaintiffs were allotted 11 hours to present their witness and DCPS was allotted 10 hours. *Id.* The hearing took place on May 29, May 31, and June 1, 2012. AR 6. After the testimony of plaintiffs' witnesses took two days, DCPS called its first witness on the last day of the hearing. AR 1528. The HO limited DCPS's time to present its case as well as plaintiffs' time for cross-examination. AR 1645-49.

The Hearing Officer released his determination (Hearing Officer Determination, or "HOD") on June 28, 2012. AR 5-29. The HO found in part for the plaintiffs and in part for DCPS. *Id.* In favor of the plaintiffs, he found the following: (1) The IEP required DCPS provide T.M. with a dedicated aide. AR 22. Its failure to do so was a material violation of the IEP and a denial of FAPE. AR 22, 27. (2) DCPS's failure to communicate effectively with plaintiffs was a material violation of the IEP. AR 23. (3) DCPS's refusal of T.M.'s psychiatrist's request for a classroom observation denied plaintiffs' right to obtain an independent evaluation, which interfered with their right to

participate in the IEP decision-making process.  AR 25.  (4) DCPS's failure to provide

accurate progress reports in the form of graded papers affected plaintiffs' ability to track

T.M.'s progress and participate in the IEP decision-making process, which was a denial

of FAPE.  AR 26.  (5) The implementation of an April 2012 IEP was a procedural

violation of the IDEA because it had not been finalized with the parents.  AR 27.   On the

other issues presented for the hearing, the HO found in favor of the District.

On September 12, 2012, plaintiffs filed suit in this Court appealing the HOD.

Compl. [Dkt. #1]; *see* 20 U.S.C. § 1415(i)(2)(A).  They now move for summary

judgment on the administrative record, arguing that the HOD should be reversed in part.[2]

Pls.' Mot. for Summ. J.; Pls.' Mem.  Plaintiffs challenge only certain adverse findings

and conclusions in the HOD as inaccurate or incorrect.  Pls.' Mem. at 30.  For brevity and

clarity, I discuss only those parts of the determination that plaintiffs contest here.

Specifically, plaintiffs claim that DCPS denied T.M. a FAPE in the following

ways:  (1) by failing to provide him speech and language services for the 2011-2012

school year, *id*. at 44-49; (2) by failing to provide him occupational therapy services

outside the classroom for the 2011-2012 school year, *id*. at 49-52; (3) by failing to allow

plaintiffs and their representatives to observe T.M. in his classroom, *id*. at 52-55; (4) by

failing to provide T.M. an appropriate location of service for the 2011-2012 school year,

*id*. at 55-59; (5) by failing to identify the Lourie Center as the location of service, *id*. at

---

[2] This Court dismissed Count II and the Rehabilitation Act Claim in Count I of the Complaint on August 21, 2013. Order (Aug. 21, 2013) [Dkt. #15].  Plaintiffs' motion for leave to file additional evidence was denied by minute order on April 28, 2014. Minute Order (Apr. 28, 2014).  The Children's Law Center moved for leave to file an *amicus curiae* brief.  Mot. of Children's Law Center for Leave to File Amicus Curiae Brief [Dkt. #32.].  That motion is DENIED.

59-60; (6) by generating and referring to false documents concerning an MDT/IEP meeting that did not take place, *id.* at 60-62; (7) by misrepresenting T.M.'s academic and therapeutic progress such that it deprived plaintiffs of effective participation in the IEP process, *id.* at 62-64; and (8) by failing to revise the BIP for ninety days, *id.* at 64-68. Plaintiffs argue that the HO's conclusions to the contrary were erroneous.  Plaintiffs also argue that the HO erred by limiting the plaintiffs to 20 minutes of cross-examination per witness. *Id.* at 68-69.

Defendant cross-moves for summary judgment on those same issues, arguing that the administrative record supports the conclusion that the Hearing Officer's determinations were appropriate and DCPS did not deny T.M. a FAPE in the ways plaintiffs describe.  Def.'s Cross Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J.; Mem. in Support of Def.'s Cross-Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Mem.") [Dkt. #28].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and the Court must draw all justifiable inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The IDEA directs the Court to base its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). However, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

The party challenging the administrative determination must "'persuad[e] the court that the hearing officer was wrong.'" *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). In evaluating a hearing officer's decision on the administrative record, this Court must give "due weight" to the hearing officer's decision, *Rowley*, 458 U.S. at 206, and "afford some deference to the expertise of the hearing officer and school officials responsible for the child's education," *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993). However, the Hearing Officer's Determination is entitled to "'less deference than is conventional' in administrative proceedings." *Reid*, 401 F.3d at 521 (quoting *Kerkam*, 862 F.2d at 887).

## ANALYSIS

### I.    Speech and Language Services

Plaintiffs contend that DCPS denied T.M. a FAPE by failing to provide speech and language services to T.M. for the 2011-2012 school year. Pls.' Mem. at 44. There is no indication in the administrative record that the school or T.M.'s representatives considered the need for speech and language services until the spring of 2011. In May of 2011, DCPS screened T.M. for the need for speech and language services. AR 147. The

speech therapist who observed T.M. reported that "articulation, voice, oral, fluency, receptive language and expressive language are all within normal limits." *Id.* His grammar skills were "adequate" and his vocabulary "functional." *Id.* She suggested areas of improvement, but concluded that "[t]hese weaknesses can be addressed in the classroom as well as with his social worker." *Id.* No speech and language services were included in T.M.'s IEPs for the 2011-2012 school year. AR 132-53, 240-52, 267-83.

During the spring of 2012, two independent practitioners evaluated T.M. and concluded he has speech and language disabilities. AR 518-23, 527-42. T.M.'s parents did not make these evaluations available to DCPS until the underlying administrative proceeding in May 2012. AR 1807-08. Plaintiffs argue that the May 2011 evaluation reached the wrong conclusion, that DCPS should have identified the speech disorder, and that T.M. is entitled to compensatory education as a remedy. Pls.' Mem. at 46-49.

The HO concluded that "the District could not reasonably have known that Student needed speech and language services at the time the IEPs at issue in this case were drafted." AR 24. I agree that the administrative record supports this conclusion. Plaintiffs did not and do not raise any challenges to the methodology of the May 2011 screening. They simply argue it was incorrect based on their later-available independent evaluations, which the school did not have until after the IEPs at issue were created.

Nor do plaintiffs present evidence proving that T.M.'s teachers should have identified T.M.'s need. Plaintiffs' expert, Dr. Missar, testified that T.M.'s deficiencies were not readily apparent, but that a teacher could have noticed based on T.M.'s academic difficulties that he may have a language processing problem. AR 1363. Dr.

Missar suggested this would cause a referral for an evaluation, *id.*, but this does not support plaintiffs' claim because T.M. *already* had undergone a speech and language screening, which concluded he did not need special education services in that area. AR 147. Similarly, another one of plaintiffs' experts, Dr. Hammond, testified that it would have been evident to DCPS that T.M. needed speech and language services. AR 1074. However, she premised her conclusion on the fact that T.M. had an IEP from Maryland that included speech-language services, *id.*, when there is no record evidence of any such inclusion in T.M.'s Maryland IEP, *see* AR 48-49, 1786.

The preponderance of evidence in the record supports the HO's determination that DCPS could not reasonably have known of T.M.'s need for language services. Plaintiffs' independent evaluations may indicate the need for T.M.'s IEP to include speech and language services going forward, but DCPS did not deprive T.M. of a FAPE by failing to provide speech and language services during the 2011-2012 school year.

## II.   Occupational Therapy

Plaintiffs argue that DCPS's provision of occupational therapy violated the terms of the IEP regarding both location and frequency, and constituted a denial of FAPE. Pls.' Mem. at 49-52. T.M.'s IEPs for the 2011-2012 school year required four hours of occupational therapy a month. AR 139, 248, 274. IEPs indicate that these services were to take place outside the general education setting. *Id.*

The administrative record reflects that T.M. missed occupational therapy sessions for a variety of reasons, and that many of the sessions that did take place occurred within the classroom. T.M.'s IEP called for him to receive weekly occupational therapy. The

10

first three attempts to provide him occupational therapy outside the classroom in

September 2011 were unsuccessful, because T.M. refused to leave the classroom. AR

174. He cooperated for one September 2011 meeting, but did not complete a full session.

*Id.* For the remainder of the year, the therapist provided sessions both in and out of the

classroom, though a handful of sessions were not provided because either T.M. or, in one

instance, the therapist, was unavailable. AR 177, 183-84, 195-202. DCPS does not

dispute these facts. Def.'s Mem. at 36-37.

Plaintiffs maintain the occupational therapy sessions must occur outside the

classroom. Pls.' Mem. at 49-52. However, the IEPs do not so specify. The IEPs require

that occupational therapy was to take place "outside the general education setting," which

is the same restriction that attaches to his "specialized instruction." AR 174, 177, 183-84,

195-202. T.M.'s classroom during the school year in question consisted of five to seven

emotionally-disturbed students, AR 1784, and cannot be considered a "general education

setting." Providing services within such a classroom does not violate T.M.'s IEP.

Plaintiffs also argue that "the school district must implement an IEP as written,"

Pls.' Mem. at 50, and that missed sessions evidence a failure to do so. Although our

Circuit has not addressed the standard to be applied when analyzing failure-to-implement

claims under the IDEA, courts in this District have adopted a standard articulated by the

Fifth Circuit in *Houston Independent School District v. Bobby R.*, 200 F.3d 341, 349 (5th

Cir. 2000). *See, e.g., Turner v. District of Columbia*, 952 F. Supp. 2d 31, 40 (D.D.C.

2013) (ESH); *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 274 (D.D.C. 2011)

(HHK).

11

> [T]o prevail on a claim under the IDEA, a party challenging
> the implementation of an IEP must show more than a *de
> minimis* failure to implement all elements of that IEP, and,
> instead, must demonstrate that the school board or other
> authorities failed to implement substantial or significant
> provisions of the IEP. This approach affords local agencies
> some flexibility in implementing IEP's, but it still holds those
> agencies accountable for material failures and for providing
> the disabled child a meaningful educational benefit.

*Bobby R.*, 200 F.3d at 349.  "Thus, a court reviewing failure-to-implement claims under

IDEA must ascertain whether the aspects of the IEP that were not followed were

'substantial or significant,' or, in other words, whether the deviations from the IEP's

stated requirements were 'material.'"  *Catalan v. District of Columbia*, 478 F. Supp. 2d

73, 75 (D.D.C. 2007) (quoting *Bobby R.*).

From September through April (when the administrative complaint below was

filed), T.M. received 24 hours of occupational therapy and missed 10 hours.[3]  AR 174,

177, 183-84, 195-202.  All but one of the missed hours were due to T.M.'s absence,

unavailability, or refusal to cooperate.  *Id.*  The therapist began providing therapy in the

classroom in October, and T.M. missed only six more hours over the remainder of the

year.  AR 177, 183-84, 195-202.  The therapist reported T.M. was progressing on his

goals.  *Id.*  The HO found that "the short gaps in providing OT were not material

violations of the IEP."  AR 23.  I agree.

The few missed occupational therapy sessions do not constitute a failure to

provide *significant* provisions of the IEP.  *Compare Catalan*, 478 F. Supp. 2d at 76

---

[3] The record reflects two additional absences, but I calculate missed hours compared to the IEP's
requirement of 4 hours per month, rather than how many sessions the therapist attempted to provide.

(finding no material violation when the "[student] received consistent speech therapy in

accordance with his IEP, and the failure to follow the IEP's requirements to the letter was

excusable under the circumstances," even though the "therapist missed a handful of

sessions and cut others short because [student]'s fatigue was rendering the therapy

unproductive (other sessions did not take place due to snow days, holidays, [student]'s

absence from school, and the like)") *with Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811,

823 (9th Cir. 2007) (finding a material violation when school district failed to provide

student five of the eight to ten hours of math instruction per week required by his IEP).

## III.    Classroom Observations

Plaintiffs next argue that DCPS's classroom observation limitations denied T.M. a

FAPE. Pls.' Mem. at 52-55. T.M.'s parents were not allowed to observe T.M.'s

classroom, and T.M.'s guardian *ad litem* requested and was denied an observation

opportunity after she previously had observed T.M. in class.[4] AR 209, 216, 221-23,

1098-99. The text of the IDEA guarantees parents the right to an independent

educational evaluation of their child, 20 U.S.C. § 1415(b)(1), but the statute is silent on

the issue of parental observations. 20 U.S.C. § 1415(b)(1). The IDEA does provide

parents the right to participate in the IEP process, *id.*; *see also Rowley*, 458 U.S. at 206

(describing "the congressional emphasis upon full participation of concerned parties

throughout the development of the IEP"), and plaintiffs argue that this means that parents

or their representatives are entitled to classroom observations at their request. Pls.' Mem.

---

[4] The HO determined that DCPS's refusal to allow T.M.'s psychiatrist, Dr. Hammond, to observe T.M did interfere with plaintiffs' right to obtain an independent evaluation under the IDEA and thereby interfered with plaintiffs' right to participate in the IEP decision-making process. AR 21. This conclusion is not at issue.

at 53-54.  However, plaintiffs do not cite any legal authority for this claim that classroom

observations by parents and their attorneys are necessary to allow parents to participate

meaningfully in the IEP process.  In the absence of any authority to the contrary, the

IDEA does not guarantee parents the right to observe on request.  Thus, DCPS's decision

not to allow T.M.'s parents and attorney to observe when requested was *not* a denial of

FAPE.

## IV.    Appropriate Location of Services

Plaintiffs argue that DCPS denied T.M. a FAPE by failing to provide an

appropriate location of services.  Pls.' Mem. at 55-59.  They contend that T.M. failed to

make appropriate emotional and educational progress, and that DCPS failed to implement

the IEP properly.  Pls.' Combined Opp'n to D.C.'s Cross-Mot. for Summ. J. and Reply to

D.C.'s Opp'n to Pls.' Mot. for Summ. J. at 11 ("Pls.' Combined Opp'n/Reply") [Dkt.

#30].  Plaintiffs' position that Bruce Monroe was not appropriate rests on record evidence

documenting T.M.'s struggles in school.  Plaintiffs point to test scores showing below-

average academic performance, AR 40, 535-36, FBA forms completed in December 2011

and January 2012 noting T.M.'s disruptive behaviors, AR 424-429, and a teacher

evaluation filled out by Mr. Coulibaly in February of 2012 also noting behavioral

difficulty, AR 460-66.

"Under the IDEA, an appropriate location of services is one which can implement

a student's IEP and meet his specialized educational and behavioral needs." *James v.

District of Columbia*, 949 F. Supp. 2d 134, 139 (D.D.C. 2013).  Courts consider a number

of factors when evaluating whether a location is appropriate, "including the nature and

14

severity of the student's disability, the student's specialized educational needs, the link

between those needs and the services offered by the school, the placement's cost, and the

extent to which the placement represents the least restrictive environment." *Branham v.*

*District of Columbia*, 427 F.3d 7, 12 (D.C. Cir. 2005) (internal quotation marks omitted).

The HO found that Bruce Monroe provided a therapeutic environment, AR 22, and

T.M. made some academic progress, AR 13.  The HO determined that "the District can

implement the IEP at Bruce Monroe," that the "District generally [had] implemented the

IEP (with two exceptions)," and that the District "can provide [T.M.] with FAPE" at

Bruce Monroe.  AR 28.  The HO did find that there had been a few violations of the IEP,

some of which denied T.M. FAPE.  *Id.*  But he ordered a remedy and concluded that,

with that remedy, the IEP could be implemented going forward.  *Id.*

All parties agree that T.M. is in need of special education services.   Emotional,

social, and behavioral issues and academic difficulty are among the reasons why he

receives such services, and evidence of their continued existence does not directly imply

the conclusion that DCPS is not providing the appropriate placement.

On the academic front, Mr. Coulibaly testified that T.M. made some academic

progress.  AR 1547-59.  The test scores in the record, although low, support this

testimony.  In October 2010, T.M. achieved a Broad Reading standard score of 63, a

Broad Math score of 16, and the evaluators were unable to attain a Broad Written

Language score.  AR 40.  By March 2012, T.M.'s standard Broad Reading score was 88,

Broad Math score was 65, and Broad Written Language score was 49.  AR 535-36.

T.M.'s unfinalized April 2012 IEP indicates that T.M. progressed from the 25th percentile

to the 69th percentile on a standardized mathematics test, and also progressed in Oral Reading Fluency.  AR 615-16.

In terms of behavior, T.M.'s teacher and social worker testified to the behavioral support services offered to T.M. at Bruce Monroe.  AR 1533-34, 1675-86.  T.M.'s social worker, Ms. Mata, testified that T.M. made behavioral progress during the 2011-2012 school year.  AR 1685-86, 1694-97.  The HO credited this testimony, AR 12, and plaintiffs suggest that this was in error because there exist documents noting T.M.'s behavioral troubles.  However, documentation of emotional, social, and behavioral issues in the middle of a school year, as referenced by plaintiffs, is in no way inconsistent with testimony regarding emotional and behavioral *progress* at the end of a school year.

Overall, the administrative record supports the Hearing Officer's conclusion that Bruce Monroe can implement T.M.'s IEP and is an appropriate location for services.  Because Bruce Monroe is an appropriate location, there was no need for the HO to make a finding as to whether the Lourie Center also was an appropriate location that could implement T.M.'s IEP or to identify the Lourie Center as the location of services.  Plaintiffs' argument to the contrary, Pls.' Mem. 59-60, is unavailing.

## V.     February 2012 Paperwork

Plaintiffs argue that DCPS denied T.M. a FAPE by generating false documents about a February MDT/IEP meeting that never occurred.  Pls.' Mem. at 60-62.  The HO found that no meeting occurred in February 2012, and that the documents reflecting such a meeting "arose from a computer mistake."  AR 25.  The HO also found that T.M. did not suffer any loss of educational benefit due to this paperwork error.  *Id.*  Plaintiffs argue

that there is no credible evidence that the documents were the result of a computer

mistake, and that the false paperwork combined with DCPS's later references to the

meeting that never occurred, *see* AR 507, 557, undermined the collaborative relationship

between the parents and school and interfered with the parents' ability to participate in

the IEP process, Pls.' Mem. at 60-62.  I disagree.

The school's Special Education Coordinator testified that she had intended to call

a February meeting, began the process of generating the paperwork, and later decided to

move the meeting to a later date so T.M.'s new teacher could complete a new FBA.  AR

1796-97, 1802-03.  Once she began inputting information into the computer system, she

had to complete all of the steps to close out of the program, and it automatically

generated paperwork.  AR 1796, 1838-40.  The Special Education Coordinator testified

that the meeting did not take place, and that she placed the paperwork into T.M.'s file by

mistake.  AR 1796-97, 1799.

Although the HO could have been more precise in deeming the paperwork the

result of a "computer process" rather than a "computer mistake," it is clear that the HO

found the Special Education Coordinator's testimony credible, AR 25, and plaintiffs have

not demonstrated otherwise.  Indeed, they cannot point to any testimony, or documents,

that are inconsistent with DCPS's explanation.  DCPS admits that the paperwork was

included in T.M.'s file, which explains why it was later referenced.  The fact remains,

however, that DCPS agrees with plaintiffs that no meeting occurred.  The mistaken

paperwork did not deny plaintiffs the opportunity to participate meaningfully in any of

T.M.'s IEP meetings that did occur.  At most, the erroneous paperwork was a procedural

violation, and procedural violations give rise to a viable IDEA claim only if they affect

the student's substantive rights. *See Lesesne v. District of Columbia*, 447 F.3d 828, 834

(D.C. Cir. 2006). Plaintiffs point to no evidence that the paperwork error led to a denial

of any educational opportunity. DCPS cannot rely on a meeting that never occurred to

argue the fulfillment of its duties, but the erroneous generation of paperwork did not itself

deny T.M. a FAPE.

## VI.    Representations of Academic and Therapeutic Progress

Plaintiffs argue that DCPS denied T.M. a FAPE by misrepresenting T.M.'s

academic and therapeutic progress. Pls.' Mem. at 62-64. The HO found that Mr.

Coulibaly failed to provide accurate progress reports when asked by one of T.M.'s

parents, which harmed the parents' ability to participate in the IEP decision-making

process, thereby denying FAPE. AR 26. Logically, this cannot be the conclusion

plaintiffs challenge. Although they do not specify, it appears they are challenging only

the HO's finding that "all other progress reports provided to Parents are accurate." *Id.*

Essentially, plaintiffs argue that T.M. was not making appropriate academic and

therapeutic progress in class, but the reports they were receiving from the school

indicated he was. *See* Pls.' Mem. at 62-64.

Points sheets from January 2012 forward filled out by Mr. Coulibaly and sent

home for a parental signature reflected good behavior by T.M. AR 298-345. A February

6, 2012, IEP Progress Report indicated that T.M. was progressing on all of his IEP annual

goals. AR 455-59. Later that month, Mr. Coulibaly and T.M.'s social worker filled out a

questionnaire in relation to an upcoming independent evaluation the parents planned to

have done with T.M.  AR 460-66.  The questionnaire identified struggles T.M. was

having in school, *id.*, and plaintiffs argue that this questionnaire—which was requested

by the parents, not part of the school's own reporting—demonstrates that the school's

official records misrepresented T.M.'s actual progress, Pls.' Mem. at 63.  Again,

plaintiffs are conflating two different types of evaluations.  An objective, standardized

assessment of T.M.'s difficulties is not necessarily inconsistent with success and/or

progress on his individualized goals.

As described above in the discussion regarding the location of services, the record

supports DCPS's position that T.M. made academic and therapeutic progress during the

2011-2012 school year.  Mr. Coulibaly testified that independent academic assessments

indicated improvement in mathematics and writing, AR 1548-49, and that his own

experiences in the classroom with T.M. also confirm that T.M. made progress in writing,

mathematics, and reading, AR 1549-59.  The HO credited T.M.'s social worker's

testimony that T.M. made behavioral progress during the time in question.  AR 12, 1685-

86, 1694-97.  Mr. Coulibaly also testified to improved behavior.  AR 1572-77.

Plaintiffs already have prevailed on part of their misrepresentation of progress

claim in the administrative hearing below, AR 26, and the District was ordered to provide

accurate progress reports, AR 28.  Plaintiffs have not demonstrated that the other reports

they received stating that T.M. was making progress were misrepresentations by the

school, because the record supports that he did, in fact, make progress during the 2011-

2012 school year.

## VII.   FBA and BIP

Plaintiffs argue that DCPS denied T.M. a FAPE by taking too long to revise his Behavioral Intervention Plan. Pls.' Mem. at 64-68.  Bruce Monroe completed T.M.'s first BIP in November 2011, and it was reviewed later that month.  AR 11.  T.M.'s then-surrogate parent consented to a second Functional Behavior Assessment in December 2011, in order to update the BIP.  *Id.*; AR 433.  In March 2012, DCPS completed an FBA, developed a revised BIP for T.M., and presented the updated FBA and BIP to plaintiffs.[5]  AR 11, 547-55, 563-64.

Plaintiffs do not dispute the HO's finding that "the District completed a second functional behavior assessment and a revised behavioral intervention plan approximately ninety days after the Parents consented to the second FBA." AR 24-25.  However, they *do* dispute the Hearing Officer's conclusion that "the District acted reasonably in moving to revise the FBA and BIP after requests" from plaintiffs and their representatives, AR 24, because the approximately ninety days was "a reasonable time period for completing a revised Functional behavior assessment and revising Student's BIP," AR 25.

Neither the IDEA nor its implementing regulations sets a timeline for reevaluation and revision of BIPs.  Plaintiffs argue that an October 2011 LRE Review recommended a thirty-day review, and therefore that taking ninety days to update the BIP was unreasonable.  Pls.' Mem. at 66.  Their argument is unpersuasive.  First, plaintiffs do not appear to have presented this precise issue before the HO.  AR 747.  Second, the LRE

---

[5] DCPS conducted a further FBA in April 2012, which school officials discussed with T.M.'s parents during the April MDT/IEP meeting.  AR 589, 599-600.

Review recommended a thirty-day review after completion of an FBA and implementation of a new BIP. AR 259. This recommendation does not speak to how long it would or should take to complete an FBA or implement a BIP. Third, even if it did, an LRE Review recommendation would not set a binding time limit on what the IDEA requires.

T.M. had a BIP in place during the ninety-day period about which plaintiffs complain. His teacher changed within that period as well. AR 1168-69. There is no reason to overturn the HO's determination of reasonableness. "The necessarily fact-specific and discretionary determination of reasonableness by a hearing officer should not be disturbed simply because a court's 'own notions of sound educational policy' may differ from those of the school authorities." *See Herbin v. District of Columbia*, 362 F. Supp. 2d 254, 260 (D.D.C. 2005) (quoting *Rowley*, 458 U.S. at 206). The record supports the conclusion that the District acted reasonably in revising T.M.'s FBA and BIP.

## VIII.  Cross-Examination Time

Finally, plaintiffs argue that the HO erred by limiting their time to cross-examine DCPS's witnesses. Pls.' Mem. at 68-69. The administrative hearing took place over three days: May 29, 31, and June 1, 2012. AR 6. Those were the same dates that the HO listed in the prehearing order, AR 805, to which plaintiffs did not object, AR 6. Plaintiffs contend that "the hearing officer had identified four days for the hearing" and the parties had agreed to reserve the fourth day "in case more time was needed." Pls.' Combined Opp'n/Reply at 17. There is no evidence in the record to support this position. On the third day of the hearing, as DCPS was presenting its witnesses, the HO noted the time

and his concern about finishing that day. AR 1645-48. He limited plaintiffs' cross-examination of the witness on the stand to an additional twenty minutes and limited cross-examination of later witnesses to twenty minutes. AR 1649. Under the circumstances, in which the time period noticed for the hearing was drawing to a close, the HO's approach to limit plaintiffs' cross-examination time was a reasonable one.

## CONCLUSION

Thus, for all the foregoing reasons, plaintiffs' Motion for Summary Judgment [Dkt. #22] is hereby DENIED and defendant's Cross Motion for Summary Judgment [Dkt. #28] is hereby GRANTED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge